DONALD D. WOLF, Respondent, *v.* ILLUSTRATED WORLD ENCYCLOPEDIA, INC., Appellant.

First Department, March 13, 1973.

*Sol I. Sokolsky* of counsel (*Jay J. Miller* and *Arthur March* with him on the brief; *McLaughlin & Stern, Ballen & Miller,* attorneys), for appellant.

*Leonard I. Schreiber,* attorney (*Abraham J. Brill* with him on the brief), for respondent.

KUPFERMAN, J. The plaintiff sues for an accounting of royalties on an illustrated encyclopedia. The court at Trial Term awarded a monetary recovery of $19,656.08.

In 1953, together with an associate, one Morehead, now deceased, plaintiff did the editorial, art and illustration work for encyclopedias and other publications for a company called National Lexicographic Board, Inc., of which plaintiff was vice-president. He was also at one time vice-president of the defendant. The defendant's predecessor, Bobley Publishing Corp., had acquired rights in these publications, subject to royalties to be paid to the plaintiff, and when the defendant succeeded to all of the rights, including that of George McKibbin & Son, from whom Bobley Publishing Corp. had acquired its rights, it continued to pay the specified contractual royalties through February, 1969 to the plaintiff.

In 1968, while the plaintiff was in the defendant's employ, he was persuaded by a former officer of George McKibbin & Son, now working for Rockville House Publishers, Inc., a subsidiary of ARA Industries, to enter into a written contract for a total sum of $45,100 (at the rate of $2,050 per volume) to design an illustrated version of the already existing one volume Columbia Encyclopedia. Because progress on the work was slow, the plaintiff in July, 1969 was given a royalty contract by Rockville in order to induce him to complete the work by the end of 1969.

The Columbia Encyclopedia now contains a substantial number of illustrations similar to or duplicates of those included in the encyclopedia distributed by the defendant.

Defendant acknowledges that there is no copyright protection involved, and that there is no specific negative covenant that would prevent the plaintiff from having prepared this material for the other work. However, it contends that there was a breach of a fiduciary obligation not to compete and sets this up as an affirmative defense to payment. " There is implicit in all contracts — for book publishing or house building — an implied covenant of fair dealing and good faith " (*Van Valkenburgh, Nooger & Neville* v. *Hayden Pub. Co.,* 30 N Y 2d 34, 45). This, of course, is classic law (*Underhill* v. *Schenck,* 238 N. Y. 7; *Kirke La Shelle Co.* v. *Armstrong Co.,* 263 N. Y. 79), **but in its**

application it varies with the size of the Chancellor's Foot. The defendant contends that it is unfair for the plaintiff to collect royalties from the defendant; while at the same time having a substantial part in preparing a necessarily competing work.

In a similar case, where the shoe was on the other foot (*Van Valkenburgh* v. *Hayden Pub. Co., supra*), the Court of Appeals in considering a complaint by an author that his publisher had caused to be created a competing work on electricity and electronics for a How-To-Do-It encyclopedia, held that the right of a publisher to issue books on the same subject was not foreclosed. (See Copyright and Judges, 19 Bull. of Copyright Soc., No. 5 [June, 1972] 343, 348.) There the contract contained a " best efforts " clause, and the Court of Appeals said, as to that, there could be a hearing to determine what monetary damages might be involved, and when the publisher's freedom for commercial activity might create more than an incidental lessening of the author's royalties.

One need not express approbation for the conclusion in the Court of Appeals in order to recognize its binding effect on the matter before us.

There is here no negative covenant. If a publisher can be free for commercial activity, an author cannot, in contradistinction, be tethered.

The author being free to make other arrangements, disapproval of his " extracurricular " activity by his prior publisher cannot be expressed in the withholding of royalties.

A possible procedure to anticipate this type of situation was suggested some 20 years ago by Edward B. Colton in " Contracts in the Entertainment and Literary Fields ", 1953 Copyright Problems Analyzed (CCH 1953) (Reprinted in Copyright Problems Analyzed [Fred B. Rothman & Co., 1966]) pages 157–158: " Much of what I have said in this lecture applies to publication contracts. There is one additional provision in publication contracts to which particular attention should be given. That is the provision in contracts for non-fictional works which provide that the author will not write a work on the same subject which will compete with the work which has been contracted for. Recently a client consulted me about a book he had written on photography. That was his field. There was a clause in the contract along the general lines of the one I have just mentioned. He wanted to know if he could write another book on photography. Unfortunately it was not very clear whether this would be a competing work. He could have avoided the dilemma in which he found himself had his contract been prop-

erly drawn. When there is a provision in the contract along the lines just discussed, then the following points should also be covered in the contract. The restriction should only apply for a specified number of years or so long as the author shall have received a specified annual amount of royalties. What constitutes a competing work on the same subject should be clearly defined. If the author thereafter writes another work, he should have the right to submit it to his publisher requesting advice on whether or not the publisher claims it is a competing work. In the event the publisher asserts such a claim, then, if the author so elects, such claim shall be submitted to arbitration.''

The judgment should be affirmed with costs.

STEVENS, P. J. (dissenting). I dissent, vote to reverse and order a new trial. Plaintiff instituted this action to recover royalties allegedly due under a written agreement and for an accounting of sales of the Illustrated World Encyclopedia, a work published by defendant.

In its affirmative defense defendant pleaded breach of contract in that plaintiff sold to another much of the same subject matter or material purchased by defendant and used in its publication, for which defendant was paying royalties to plaintiff. This material was sold to and for publication in the Illustrated Columbia Encyclopedia, owned and published by a competitor of the defendant. The trial court found nothing in the agreement which prohibited such acts and rendered judgment for the plaintiff. In the course of the trial defendant, in my view, was unduly limited in the presentation of its proof.

It is correct that there is no specific limiting language in the agreement which forbade a double sale. However, implicit in every contract is the obligation of fair dealing. Plaintiff, while being paid royalties, undertook by his acts to destroy the source or, at the very least, to substantially impair and diminish the value of the material sold and for which plaintiff was receiving royalties. This should not be permitted (*Underhill v. Schenck,* 238 N. Y. 7; *Kirke La Shelle Co.* v. *Armstrong Co.,* 263 N. Y. 79; *April Prods.* v. *Harms, Inc.,* 165 Misc. 883).

In *Van Valkenburgh, Nooger & Neville* v. *Hayden Pub. Co.* (33 A D 2d 766, order resettled 36 A D 2d 947, affd. 30 N Y 2d 34), to which the majority refers, we found no fiduciary relationship, and stated that the transaction was a purely commercial one for which damages afforded adequate relief. In that case the publisher was bound by agreement to use its '' best efforts '' in promotion of the author's books. When the publisher was

unsuccessful in obtaining a reduction in royalties it hired others to prepare a new group of electronic books, and did not disclose that fact to the author. While the books produced were similar in organizing, presenting and publishing of material, there was nothing to indicate that the publisher appropriated the work product of the author, only that it failed to use its " best efforts " to promote the sale of the author's books. A measure of damages could readily be calculated.

In the case before us, plaintiff sold again much of the identical material for which plaintiff was paid and for which he was receiving royalties. In *Van Valkenburgh* (*supra*), the Court of Appeals reaffirmed that there is implicit in all contracts a covenant of fair dealing and good faith (p. 45). The court observed, " although a publisher has a general right to act on its own interests in a way that may *incidentally* lessen an author's royalties, there may be a point where that activity is so manifestly harmful to the author, and must have been seen by the publisher so to be harmful, as to justify the court in saying there was a breach of the covenant to promote the author's work " (*supra,* p. 46; emphasis supplied). It noted there was evidence of no great variation in sales of the author's works for an 18-month period prior to and after the publication of the second work, noted that the Appellate Division did not find a breach of the covenant of fair dealing, and decided that certain findings, as were made by the Appellate Division, could have been made as a matter of law.

In the case now on appeal, plaintiff deliberately resold the identical material with what only reasonably could have been the objective of undermining defendant's product while reaping dual benefits from his own wrong. There is no sound reason why, in equity or in law, plaintiff should continue to be enriched by his own wrong. Damages in this type of case cannot be reasonably calculated and would afford a totally inadequate remedy.

LANE and CAPOZZOLI, JJ., concur with KUPFERMAN, J.; STEVENS, P. J., and McGIVERN, J., dissent in opinion by STEVENS, P. J.

Judgment, Supreme Court, New York County, entered on February 10, 1972, affirmed. Respondent shall recover of appellant $60 costs and disbursements of this appeal.